OPINION
{¶ 1} On May 20, 2005, appellant, Richard Norman, was transported to the Knox County Jail to perform a breath test to determine the presence of alcohol. Appellant tested .007, under the legal limit. The arresting officer then asked appellant to submit to a urine test. Appellant agreed, but after trying for four minutes, was unable to go. The arresting officer had appellant sign the refusal form, and gave appellant an administrative license suspension for refusing to take the urine test.
 {¶ 2} Appellant appealed the administrative license suspension to the Mount Vernon Municipal Court. Hearings were held on December 9 and 28, 2005. By judgment entry filed December 30, 2005, the trial court affirmed the license suspension.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "THE TRIAL COURT ERRED IN AFFIRMING THE ADMINISTRATIVE LICENSE SUSPENSION OF APPELLANT'S DRIVER'S LICENSE."
 I {¶ 5} Appellant claims the trial court erred in affirming the administrative license suspension of his driver's license as he did not refuse to take a breath test or test for the chemical analysis of his blood. We agree.
 {¶ 6} R.C. 4511.191 governs chemical tests for determining alcoholic content of blood, effect of refusal to submit to test and seizure of license. Subsections (A)(2) and (3) and (B) state the following in pertinent part:
 {¶ 7} "(2) Any person who operates a vehicle, streetcar, or trackless trolley upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle, streetcar, or trackless trolley shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug, or alcohol and drug content of the person's whole blood, blood serum or plasma, breath, or urine if arrested for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance.
 {¶ 8} "(3) The chemical test or tests under division (A)(2) of this section shall be administered at the request of a law enforcement officer having reasonable grounds to believe the person was operating or in physical control of a vehicle, streetcar, or trackless trolley in violation of a division, section, or ordinance identified in division (A)(2) of this section. The law enforcement agency by which the officer is employed shall designate which of the tests shall be administered.
 {¶ 9} "(B)(1) Upon receipt of the sworn report of a law enforcement officer who arrested a person for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance that was completed and sent to the registrar and a court pursuant to section 4511.192 of the Revised Code in regard to a person who refused to take the designated chemical test, the registrar shall enter into the registrar's records the fact that the person's driver's or commercial driver's license or permit or nonresident operating privilege was suspended by the arresting officer under this division and that section and the period of the suspension, as determined under this section."
 {¶ 10} Appellant's assignment of error raises two issues. First, appellant argues he cannot be required to take a second test after having successfully passed the first test. We disagree with this argument because the specific language of R.C.4511.191(A)(2) and (3) states "test or tests," thereby authorizing the request for more than one test under the implied consent law.
 {¶ 11} Second, appellant argues the trial court's decision that his inability to urinate was not psychologically or medically induced was against the sufficiency of the evidence.
 {¶ 12} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307.
 {¶ 13} We agree with appellant on this issue for the following reason. In its judgment entry filed December 30, 2005, the trial court determined appellant refused to submit to the requested urine test, finding the following:
 {¶ 14} "The Court further finds that the Defendant sometimes must urine 4 or 5 times per night. If he sleeps a normal 8 hours, he would be urinating approximately every 2 hours. The Defendant's expert witness testified that urination is difficult for the Defendant, but there is no physiological reason that he could not urinate."
 {¶ 15} These findings are in contradiction to the unrefuted testimony of appellant's doctor, Dr. Rene Blaha, who explained the following:
 {¶ 16} "Q. To what extent in the course of your examination of Mr. Norman was his urine flow impaired, if any?
 {¶ 17} "A. Well he has what we called a two plus prostate, and that's when we look at the size of the prostate about (indicating) this size under the thumb here, and when you — finger on this side, you're going two fingers to the side of each side would be a two plus. So one plus is an enlargement, and two plus is pretty much in the pelvic area fills it up, the prostate. So it's a good-size prostate. It's at least from the width when you measure that, it's at least three times the normal size.
 {¶ 18} "Q. Okay. Doctor, I'm — ask you to assume certain facts. On May 20th, 2005, Mr. Norman was arrested for driving under the influence and he was asked to provide a urine sample in the course of the arrest, and that he tried to provide that sample standing at the urinal for about 4 minutes and indicated to the officer that he was not able to go. Assuming, taking those facts, assuming those facts to be true, doctor, do you have an opinion based upon your education, training and experience as well as your own knowledge of Mr. Norman's condition and the facts that you've learned from his treatment and examination of him, as to a reasonable degree of medical certainty and probability of the effect of the enlarged prostate of Mr. Norman on his urine flow ability on May 20th, 2005?
 {¶ 19} "A. Yes, I do.
 {¶ 20} "Q. And what is that opinion?
 {¶ 21} "A. Well first, you know, you can just have a problem psychologically to urinate if you're under a stress situation. But when you have on top of that, an anatomical compromise there, so it becomes even more so difficult. It — I've seen a lot of prostate cases through the years and so it, it just compromises that flow and so —
 {¶ 22} "Q. And what is the basis for your opinion?
 {¶ 23} "A. Well the physical exam, his history, getting up at night, you know, 4 to 5 times to urinate means the water is not emptying. The prostate is already obstructing the flow of the urine out, and so those are the pretty clear basis for that bladder not emptying out.
 {¶ 24} "Q. Would it be a reasonable expectation that on May 20, 2002, when the officer asked him to provide a urine sample, that after 4 minutes of trying, that he wouldn't be able to go, that this would be due to the enlarged prostate condition that he had?
 {¶ 25} "A. I, I believe that, that's part of it, you know. I think it's also psychological component, but yes." December 28, 2005 T. at 37-38.
 {¶ 26} Appellant testified he could not pass any urine when he attempted to do so. December 9, 2005 T. at 22-23.
 {¶ 27} Upon review, we find the trial court's findings and decision are not substantiated by the unrefuted testimony.
 {¶ 28} The sole assignment of error is granted.
 {¶ 29} The judgment of the Mount Vernon Municipal Court of Knox County, Ohio is hereby reversed.
By Farmer, J. Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mount Vernon Municipal Court of Knox County, Ohio is reversed.